UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE**
**50 WALNUT STREET, P.O. BOX 419**
**NEWARK, NJ  07101-0419**
**(973) 645-6340**



**WILLIAM J. MARTINI**
     **JUDGE**

**LETTER OPINION**

November 3, 2010

Howard Gregory
Northeast New Jersey Legal Services
152 Market Street
Paterson, NJ 07505
    *(Attorneys for Plaintiff)*

Sandra M. Grossfeld
Office of the United States Attorney
26 Federal Plaza, Room 3904
New York, NY 10278
    *(Attorneys for Defendant)*

     RE:   *Sandra Perdomo O/B/O V.M.S. v. Commissioner of Social Security*
            <u>Civil Action No. 09-2972 (WJM)</u>

Dear Counsel:

     Plaintiff Sandra Perdomo ("Perdomo") brings this action on behalf of her minor son V.M.S. ("VMS") pursuant to 42 U.S.C. § 405(g) of the Social Security Act, seeking review of a final determination by the Commissioner of Social Security ("Commissioner") that VMS is not disabled and denying her application for Supplemental Security Income ("SSI").  There was no oral argument.  Fed. R. Civ. P. 78. For the following reasons, the Commissioner's decision is **AFFIRMED**.

**I.**     **BACKGROUND AND PROCEDURAL HISTORY**
     VMS is a nine year old boy of Hispanic descent who has been diagnosed with

1

Attention Deficit Hyperactivity Disorder ("ADHD") and related learning and speech disabilities. (Administrative Transcript, hereinafter "Tr.," 328). VMS was born on October 31, 2000; he was four years old when his claim was initially filed. (*Id.*). He lives with his mother and four siblings in Clifton, New Jersey. (*Id.*). VMS's aunt, Mary Depina ("Depina"), is not a member of the household but frequently assists Plaintiff and his siblings with homework. (*Id.*). The language spoken at home is Spanish although VMS is also exposed to English. (*Id.* at 165, 191). VMS attends a school for children with learning and behavioral problems. (*Id.* at 328). He spends two hours per day, five days a week in special education, and he currently takes Concerta, a medication to reduce his hyperactivity. (*Id.* at 195, 210, 328).

Perdomo filed the application for SSI on behalf of VMS on October 28, 2004, alleging disability due to ADHD and related learning and behavioral problems. (*Id.* at 17). The claim was initially denied on September 13, 2005 due to a lack of evidence compounded by Perdomo's failure to take VMS in for a scheduled consultative exam. (*Id.* at 34). On October 14, 2005 Perdomo filed a request for reconsideration and on April 25, 2006 the appeal was denied. (*Id.* at 37, 40). Perdomo subsequently filed a request for a hearing before an administrative law judge ("ALJ"), which was held on March 25, 2008. (*Id.* at 44). At the hearing, Perdomo and Depina testified as to VMS's condition. (*Id.* at 96).

ALJ Richard L. DeSteno ("DeSteno") issued an unfavorable opinion denying Perdomo's claim. (*Id.* at 11). In formulating his opinion, DeSteno reviewed VMS's medical records. In March 2004, prior to filing the claim, VMS was diagnosed by Dr. Malini Bhatia ("Dr. Bhatia") with disruptive behavior which ruled out ADHD. (*Id.* at 250). Dr. Bhatia recommended medication. (*Id.*). During the initial evaluation by Dr. Bhatia, VMS appeared to be shy at times and very aggressive at other times. (*Id.*). VMS was also easily distracted. (*Id.*). However, when VMS played by himself, he was able to focus fairly well. VMS appeared to be demanding but had little verbal exchange with his peers. (*Id.*). Additionally, he had difficulty controlling his impulsive behavior at times and waiting his turn. (*Id.*). At other times he refused to participate, sat, and did nothing. (*Id.*).

In June 2004 Dr. Bhatia observed VMS again. During observation, VMS had some difficultly with impulse control and was very fidgety. (*Id.* at 136). His attention span continued to be somewhat short. (*Id.*) His speech appeared to be somewhat lagging, although he was speaking a few more words at each time. (*Id.*). He continued to be somewhat disruptive and had difficulty following direction and needed to be redirected numerous times. (*Id.*). Dr. Bhatia recommended a trial of stimulant medication. (*Id.*).

During his analysis, the ALJ also reviewed VMS's medical records and behavioral reports from after the filing of the claim. A neurology note in November 2004 revealed that claimant was referred for evaluation of ADHD and behavioral problems. (*Id.* at 137, 328). VMS was also started on Ritalin by a psychiatrist. (*Id.* at 370).

A speech and language evaluation in January 2005 presented VMS as a "quiet, shy little boy with an extremely soft voice." (*Id.* at 165). When asked to repeat his

2

responses, he had the tendency to put his head down and would not respond. (*Id.*). He did not display any behavioral issues but had difficulty following directions. (*Id.*). VMS's articulation could not be evaluated due to lack of verbal responses. (*Id.*). In terms of receptive language, he demonstrated weak vocabulary skills, did not respond on command, had difficulty following simple directions and had difficulty pointing to appropriate pictures. (*Id.*). Expressively, he displayed a limited vocabulary, had difficulty combining words to form short phrases, did not use his name and had difficulty answering simple questions. (*Id.*).

A neurology note in June 2005 showed VMS switched from Ritalin to Concerta. (Tr. 370-373). After switching medicines, significant improvements were noticed at home and in school. (*Id.*).

The consultative psychiatric evaluation performed by Dr. Kim Arrington in January 2006 revealed claimant was cooperative and his manner of relating, social skills and overall presentation were age appropriate. (*Id.* at 210-13). He appeared his stated age and was dressed appropriately. His scholastic performace was noted as "good" and his gait, posture and motor behavior were all normal. (*Id.*). His speech was marked by minimal verbalizations. (*Id.*). His thought processes were coherent and goal directed with no evidence of hallucinations, delusions or paranoia in the evaluation setting. VMS's attention and concentration were impaired due to some inner distractibility. He was unable to do counting. (*Id.*). His recent and remote memory skills were intact. He was able to recall three objects immediately and after five minutes. (*Id.*). He was able to repeat back five digits forward and three digits backwards. (*Id.*). Cognitive functioning was estimated to be in the below average range. His insight and judgment were fair to poor. The intelligence evaluations revealed that VMS obtained a verbal IQ of seventy-four, a performance IQ of eighty- eight and a full scale IQ of seventy-nine on WPPSI-III. (*Id.* at 212). It was noted some scores may have been impacted by fluctuation in VMS's attention span. (*Id.*).

On a January 2006 teacher questionnaire, VMS's teacher, Carolyn Schwartz ("Schwartz"), reported VMS was in a preschool disabled class for two hours per day, five days a week. (*Id.* at 214). Schwartz also reported that VMS had problems functioning in two domains: "acquiring and using information" and "attending and completing tasks." (*Id.* at 215-16). With regard to acquiring and using information, VMS had a serious problem comprehending oral instructions, understanding school and content vocabulary, and providing organized oral explanations and adequate descriptions. (*Id.* at 215). He also had an obvious problem comprehending and doing math problems and applying problem-solving skills in class discussions. He had trouble comprehending instruction and needed verbal cues to follow two-step direction. (*Id.*). With respect to attending and completing tasks, VMS had a serious problem on an hourly basis waiting to take turns. (*Id.* at 216). He had a serious problem on an hourly basis working without distracting self or others and working at a reasonable pace/finishing on time. (*Id.*).

The March 2006 language and speech progress report indicated that VMS received therapy twice weekly to improve receptive and expressive language skills. (*Id.* at 338). He continued to make slow but steady progress in all areas. In terms of receptive

language, he could follow simple one to two step directions.  He was able to point to pictures at an age appropriate level, though he had difficulty naming them.  VMS also continued to make progress with regards to expressive language.  His mean length of utterance had increased to three to four words.   He was able to use sentences to communicate.  He was also able to name a variety of common objects/pictures.  His social skills continued to improve.  He was able to answer simple yes/no questions and some simple "wh" questions.  He was able to say his name when asked, "what is your name?"  Although VMS still presented weaknesses, he continued to improve in all areas of speech and language development.  (*Id.* at 338).

The April 2006 consultative speech and language evaluation revealed that VMS was cooperative and displayed adequate attention and concentration.  (*Id.* at 239).  On the Preschool Language Scale-IV, VMS obtained an auditory comprehension score of seventy-three (four years one month age equivalent); expressive communication score of seventy-three (three year eleven month age equivalent); and a total language score of seventy-one (four year age equivalent).  (*Id.* at 240).  Receptively, VMS was able to understand expanded sentences, qualitative concepts, spatial concepts, and time concepts.  (*Id.*).  Expressively, VMS was able to answer questions logically, use words that describe physical state, and complete analogies.  (*Id.*).  The oral peripheral examination revealed that VMS displayed very little motion during speaking events.  (*Id.*).  Parameters of pitch, vocal quality, intensity and rate appeared to be inappropriate for his age and gender.  (*Id.*).  Throughout testing, VMS spoke just above a whisper.  (*Id.*).  His jaws and lips were closed and very tight.  (*Id.*).  This posture affected his voice production.  (*Id.* at 241).  Fluency skills were judged to be within normal limits.  (*Id.*).  Articulation skills at the single word level were age appropriate.  (*Id.*).  VMS had a moderate expressive and receptive delay.  (*Id.* at 242).

In April 2006, state agency physician Dr. Thomas Harding ("Dr. Harding") concluded VMS suffered from an ADHD and speech/language delays.  (*Id.* at 251).  These impairments were severe; however they did not meet, medically equal or functionally equal the listings.  (*Id.*).  VMS was assessed with less than marked limitations in: acquiring and using information; attending and completing tasks; interacting and relating with others; and health and physical well-being.  (*Id.* at 253).  He had no limitations in moving about and manipulating objects and caring for self.  (*Id.* at 254).

In May 2006 the psychological report prepared by Dr. Lori Jensen-Schaffer ("Dr. Jensen-Schaffer") indicated that VMS, then five years six months old, demonstrated adequate eye contact and was responsive to the evaluator.  (*Id.* at 272).  Cooperation was satisfactory.  (*Id.*).  He began tasks as they were presented to him and was able to follow directions with support.  (*Id.*).  He was not distractible or fidgety.  (*Id.*).  His activity level was appropriate and he remained seated through the evaluation.  (*Id.*).  He appeared to lack an adequate amount of self confidence and tended to give up easily when tasks became difficult.  (*Id.*).  His speech was difficult to understand, as he tended to mumble.  (*Id.*).  He used sentences to express himself, speaking primarily in English.  (*Id.* at 273).  He did not look to examiner for reinforcement or for help.  (*Id.*).  He responded positively

4

when successful and dealt with failure by giving up and going on to the next task. (*Id.*). On the WPPSI-III test, VMS obtained a verbal IQ of seventy-four, a performance IQ of eighty-one and a full scale score of seventy-four. (*Id.* at 276-77). His scores on the Social Skills Rating System revealed that assertive behaviors were adequately developed, while cooperation and self-control fell above average. (*Id.* at 275). The number of problem behaviors that he exhibited fell below average (sixteen percent). (*Id.* at 274-75). There were no problem behaviors rated by the teacher. (*Id.* at 275).

In March 2007, the neurology note indicated that VMS had been more attentive in class with less fidgeting with medication. (*Id.* at 378). Additionally, the following neurology report in September 2007 also indicated that Concerta continued to help VMS with behavior. (*Id.* at 324).

ALJ DeSteno evaluated the evidence and testimony according to the three step sequential evaluation process promulgated by the Social Security Administration pursuant to 20 C.F.R § 416.924(a)-(d) and concluded that VMS was not disabled on May 30, 2008. Specifically, the ALJ made the following determinations: (1) VMS had not engaged in substantial gainful activity at any time relevant to its decision, (2) VMS has severe impairments involving an attention deficit hyperactivity disorder and language delay, (3) VMS does not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in the C.F.R., and (4) VMS does not have an impairment or combination of impairments that functionally equal the listings in C.F.R. (*Id.* at 20).

Perdomo requested review of the ALJ's decision by the Appeals Council. (*Id.* at 9). On November 8, 2008, the Appeals Council denied the request for review. (*Id.* at 7). On March 1, 2010, after being granted additional time, Perdomo filed the Complaint in the district court. (*Id.* at 5). Perdomo alleges that the ALJ made the following errors when denying the claim: (1) the ALJ failed to adequately explain why he was attributing more weight to a 2006 IQ test than conflicting 2006 evidence to conclude that VMS has less than marked limitation in the "Acquiring and Using Information" domain, and (2) the ALJ erred when he found, without adequate discussion of probative evidence in the record, that VMS had less than marked limitation in the "Attending and Completing Tasks" domain.

**II.    ANALYSIS**
    **A.    Standard of Review**

At the administrative level, a three step sequential evaluation process is used to determine whether an individual under the age of 18 is disabled and therefore entitled to benefits. 20 C.F.R. § 416.924(a). In the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. An individual is engaging in substantial gainful activity if he is doing significant physical or mental activities for pay or profit. 20 C.F.R. § 416.972. If the individual is engaging in substantial gainful activity, he is not disabled. 20 C.F.R. § 416.924(c). If the individual is not engaging in substantial gainful activity, the analysis proceeds to the second step.

In the second step, the ALJ must conclude whether the claimant has a medically

determinable "severe" impairment or a combination of impairments that is "severe."  For an individual who has not attained age 18, a medically determinable impairment or combination of impairments is not severe if it is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations.  If the claimant does not have a medically determinable sever impairment, he is not disabled.  20 C.F.R. § 416.924(c).  If the claimant has a severe impairment, the analysis proceeds to the third step.

In the third step, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or medically equals the criteria of a listing, or that functionally equals the listing.  In determining whether an impairment or combination of impairments functionally equals the listings, the ALJ must assess the claimant's functioning in terms of six domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for himself, and (6) health and physical well-being.  To functionally equal the listings, the claimant's impairment or combination of impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.  20 C.F.R. § 416.926a(d).  Social security regulations describe how to determine when a child's limitation is either marked or extreme.  20 C.F.R. §§ 416.926a(e)(2)-(3).

The district court reviews the ALJ's application of the law *de novo*.  *See Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1191 (3d Cir. 1986).  On the other hand, factual findings are reviewed to determine whether they are supported by substantial evidence.  *See Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).  When substantial evidence for an ALJ's factual findings exists, this Court is bound by those determinations of the ALJ.  *See Id.* (citing 42 U.S. § 405(g)).  Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla."  *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (quoting *Jesurum v. Sec'y of the U.S. Dep't of Health & Human Srvcs.*, 48 F.3d 114, 117 (3d Cir. 1995)).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  Under the substantial evidence standard, the district court is required to review the record as a whole.  *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).  If there is more than one rational interpretation of the evidence in the record, this Court must accept the conclusions of the ALJ and affirm his decision.  *See Izzo v. Comm'r of Soc. Sec.*, 186 F. Appx. 280, 284 (3d Cir. 2006).  The Court is "not permitted to weigh the evidence or substitute [its] own conclusions for that of the fact-finder."  *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).  Overall, the substantial evidence standard is a deferential standard of review, which requires deference to inferences drawn by the ALJ from the facts, if they are supported by substantial evidence.  *Schaudeck*, 181 F.3d at 431.

Additionally, the Third Circuit requires an ALJ to "set forth the reasons for his decision," so that the district court can conduct meaningful judicial review.  *See Burnett v. Comm'r*, 220 F.3d 112, 119 (3d Cir. 2000).  However, the ALJ is not required to use any particular language or follow any specific formula, as long as sufficient details are

provided to allow for meaningful judicial review. *Jones*, 364 F.3d at 505.

>  **B.     The ALJ's Alleged Failure to Explain Adequately His Conclusion that VMS has Less Than a Marked Limitation in the "Acquiring and Using Information" Domain**

Perdomo's first argument is that the ALJ failed to explain sufficiently his conclusion that VMS had less than a marked limitation in the "Acquiring and Using Information" domain, and in particular why more weight was given to a 2006 IQ test than to contradictory evidence from the same year. (Perdomo's Brief (hereinafter "Pl. Br.") at 28). If an ALJ concludes that a claimant who is a minor child does not have an impairment or combination of impairments that meets or equals a CFR listing, he can nevertheless conclude that a child is disabled if he finds that the child possesses an extreme limitation in any single of a set of domains identified by the Social Security Administration ("SSA") for this purpose, or a marked limitation in at least two different domains. Here, the ALJ found that VMS possessed a less than marked limitation in the "Acquiring and Using Information" domain. (Tr. at 20). However, Perdomo alleges that this finding was erroneous because the ALJ relied more heavily on the results of a 2006 IQ test than to other contradictory evidence from the same year, without explaining why. (Pl. Br. at 36). Perdomo further alleges that in fact, VMS had an extreme limitation in this domain in 2004 and a marked limitation subsequently. (*Id.* at 30, 32).

Perdomo's reasoning lacks merit. As Defendant argues, Perdomo's assertion that VMS possessed an extreme limitation in 2004 appears to be based upon her own extrapolation of test data, in reliance upon 20 C.F.R.§ 416.926a(e)(2)(ii), a regulation that pertains only to children under the age of 3, even though VMS was four years old in 2004. *See* 20 C.F.R. § 416.926a(e)(2)(ii) (defining marked limitations in minors under the age of two). Clearly, the standard that Perdomo seeks to use is not applicable to VMS. Furthermore, even if that standard were to be used, the C.F.R. plainly states that no single test score is determinative with respect to finding disability. *See* 20 C.F.R. § 416.926(e)(2)(ii) (stating that the SSA will not rely upon any test score alone).

Perdomo's argument that VMS has had a marked limitation since 2004 is also flawed because again, she relies on criteria that do not apply to children aged three or older. Perdomo argues that VMS had a marked limitation in this domain "between one-half and two-thirds of his age." However, the provision of the C.F.R. cited for this proposition does not apply to children aged three or older. *See* 20 C.F.R. § 416.926(e)(2)(ii) (stating that the applicability of this provision of the C.F.R. is limited to claimants who have not yet attained the age of three). The C.F.R. also states that a child of any age will not have a marked limitation when he has a valid score limitation (two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain and where the child's day-to-day functioning in domain related activities is consistent with that score). *See* 20 C.F.R. § 416.926a(e)(2)(iii). Perdomo does not even attempt to argue that VMS's scores do not indicate a valid score limitation.

In addition, the record contained substantial evidence to support the ALJ's finding

that VMS's limitation was less than marked. Various teachers noted that VMS's dominant language was Spanish and therefore it was not surprising that he had certain difficulties comprehending oral instructions in English and understanding school vocabulary. (Tr. 193, 214, 215). Other teachers, test administrators, and language professionals noted that VMS had made "steady progress," he spoke in sentences that were "quite intelligible," he was proficient in identifying colors and shapes, stating his name, address, and telephone number, and identifying body parts, and that he had "come a long way." (*Id.* at 270, 366, 289). His kindergarten class was listed as a program for learning and/ or Language Disability- Mild/ Moderate, indicating that school administrators did not believe he had a marked or more severe limitation. (*Id.* at 298, 300). In addition, Dr. Harding, a state agency consultant, reviewed VMS's records and concluded that he had a less than marked limitation in this domain. State agency consultants are "highly qualified physicians and psychologists who are also considered experts in Social Security disability evaluation." 20 C.F.R. § 416.927(f)(2)(i). Their opinions are given much deference and may override those of treating physicians. *Alexander v. Shalala*, 927 F.Supp. 785, 795 (D.N.J. 1995).

Finally, Perdomo's argument that the ALJ did not sufficiently explain why he did not give much weight to the May 2006 psychological report prepared by Dr. Jensen-Schaffer is unavailing. Although the Third Circuit requires an ALJ to explain not only the evidence he or she considered which supports the result but also the evidence that was rejected, a short sentence or paragraph will do; the ALJ need not supply a comprehensive explanation every time evidence is rejected. *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Here, the ALJ fully complied with the Third Circuit's requirements by devoting an entire paragraph containing 8-9 sentences to this psychological report but then concluding that this report did not demonstrate that VMS had an extreme or marked limitation in the domain. (Tr. 23-24). Moreover, the ALJ considered and set forth in detail the evidence from 2004- 2008, not just from 2006. (*Id.*). The ALJ also set forth not only Perdomo's testimony but also that of her sister and found that it was not credible to the extent that it contradicted the findings discussed in the decision. (*Id.*). Therefore, this first claim fails.

### C. The ALJ's Alleged Failure to Explain Adequately His Conclusion that VMS has Less Than a Marked Limitation in the "Attending and Completing Tasks" Domain

Perdomo's second argument is that the ALJ failed to adequately explain his determination that VMS had less than a marked limitation in the "Attending and Completing Tasks" domain and that this constitutes error. (Pl. Br. at 38). Specifically, Perdomo argues that the ALJ failed to explain why he credited certain portions of her testimony that tended to show VMS did not have a marked limitation and not others that showed the opposite. (*Id.* at 42). However, this characterization is simply not accurate. The opinion as a whole reveals that the ALJ went through all of the evidence in formulating his opinion. (Tr. 22, 24). He relied on the evidence showing that VMS demonstrated marked improvement while taking the new medication. (*Id.*). He also

8

relied on the March 2006 speech and language process report which indicated that VMA was making slow but steady progress in all area, he was becoming more independent in terms of following directions, his mean length of utterance had improved, and his social skills had also improved. (*Id.* at 23). He also considered the April 2006 evaluation showing that VMS was cooperative and displayed adequate attention and concentration, and the May 2006 report indication that he demonstrated fair effort, was not distractible or fidgety, and did not look to the examiner for reinforcement or help. (*Id.*). Moreover, Perdomo does not point out any convincing evidence showing that VMS's limitation was marked or extreme. The ALJ performed his role while meeting the requirements of the Third Circuit. *See Cotter v. Harris*, 650 F.2d at 482. This claim fails as well and must be denied.

### III.   CONCLUSION

For the reasons stated above, the Commissioner's decision is **AFFIRMED**. An appropriate order follows.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**